IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NANCY SHIPP,

       Plaintiff,

vs.                                   No. CIV 02-0653 LCS/LAM

DALE L. HARRISON, JERRY
LITTLE, DAVE WEAVER, GABRIEL
VEGA and JOHN DOES I-X, Individually
and in their official capacity, and THE
BOARD OF COMMISSIONERS OF
DOÑA ANA COUNTY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc.

41), filed on May 21, 2003,  Defendants' Motion for Expedited Ruling on Defendants' Motion for

Separate Trial and to Stay Discovery (Doc. 47), filed on June 16, 2003, Defendants' Motion for

Separate Trial and to Stay Discovery (Doc. 49), filed on June 16, 2003, Plaintiff's Rule 56(f) affidavit

attached to Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 51), filed on

June 26, 2003, and Defendants' Motion to Strike Exhibits (Doc. 52), filed on June 26, 2003.

The undersigned United States Magistrate Judge, acting upon the consent of the parties and

the designation of the United States District Judge pursuant 28 U.S.C. § 636, and having considered

the submissions of counsel, relevant law, and being otherwise fully advised, finds that Plaintiff's Rule

56(f) request should be **GRANTED** and that Plaintiff should be permitted to conduct additional

discovery on the claims of inadequate training, supervision and discipline, Defendants' Motion for

Expedited Ruling should be **GRANTED**, Defendants' Motion for Separate Trial and to Stay

Discovery should be **GRANTED IN PART AND DENIED IN PART**, and that Defendants' Motion to Strike Exhibits should be **GRANTED IN PART AND DENIED IN PART,** Defendants' Motion for Summary Judgment should be **GRANTED IN PART, DENIED IN PART, AND HELD IN ABEYANCE PENDING FURTHER BRIEFING.**

## I.      Background.

The following statement of facts is set forth in the light most favorable to Plaintiff, with all reasonable inferences from the record drawn in her favor.  *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir. 1997).  On October 4, 2000, Defendants Harrison and Vega were dispatched to Plaintiff's residence in response to a domestic disturbance call.  (Compl. ¶¶ 3, 4.)  Plaintiff's neighbor had called 911 to report that Plaintiff and her boyfriend were fighting in Plaintiff's front yard.  (Pl's Ex. 1.)  The neighbor told the dispatcher that Plaintiff and her boyfriend engaged in such behavior at least once a week, the neighbor did not see any weapons, Plaintiff's boyfriend drank a lot, and the noise was preventing the neighbor's children from getting to sleep on a school night.  (*Id.*)

When Defendants Harrison and Vega arrived at Plaintiff's house, Plaintiff was in the front yard with her boyfriend, Clay Pritchett.  (Compl. ¶¶ 3, 4.)  Harrison had been at that location and had dealt with Pritchett and Plaintiff at least two prior occasions.  (Def. Ex. 1 at 18-20; Pl's Ex. 4.)  On one occasion, a drunken Pritchett reported that Plaintiff had stolen Pritchett's cell phone.  (Def. Ex. 1 at 19; Pl's Ex. 4.)  Defendant Harrison called Plaintiff on the cell phone and she explained that she did not want Pritchett to have the phone because he was intoxicated and would call and harass her at all times of night and that she would return the phone the next day.  (Def. Ex. 1 at 19.)  On the other occasion, Defendant Harrison was called to remove a cat because Plaintiff was violently allergic

to cats.  (Def. Ex. 1 at 20; Pl's Ex. 4.)  In the course of the cat encounter, Defendant Harrison

observed a handgun in the home.  (Def. Ex. 1 at 33; Pl's Ex. 4.)  Plaintiff testified that she owned a

.22 caliber handgun and, that on prior occasions, sheriff's department officers had been in her house

when firearms were in plain view.  (Def. Ex. 2 at 33, 49, 50.)  Plaintiff testified that she did not tell

the officers that Pritchett had access to a gun because the guns were not in the house, but were in an

RV.  (Pl. Ex. 5.)

When Defendant Harrison arrived at Plaintiff's house on October 4, 2000, he observed that

Pritchett had a large knife attached to his belt.  (Def. Ex. 1 at 26.)  The blade was three to four inches

long and was visible from a distance of about ten to fifteen feet.  (*Id.*)  There was a snarling dog in

Plaintiff's front yard.  Plaintiff and Pritchett grabbed the dog and Pritchett took the dog into the

house.  (Pl. Ex. 5.)  Defendant Vega pointed his gun at the house and threatened to shoot the dog.

(*Id.*)

Pritchett had been drinking.  (Def. Ex. 2 at 41.)  After Pritchett went into the house, he

retreated to the back bedroom.  (Def. Ex. 1 at 27.)  Plaintiff stood in front of the door and was upset

and angry with Defendants Harrison and Vega.  (*Id.*)  Plaintiff told the officers that she and Pritchett

had gotten into an argument.  (Def. Ex. 1 at 28.)  Pritchett opened the front door and slammed it

shut.  (Def. Ex. 1 at 29.)  Defendant Harrison told Pritchett that he needed to come outside so that

they could talk to him and find out what was going on.  (Def. Ex. 1 at 31.)  Defendant Vega

attempted to interview Pritchett through the door, but Pritchett did not want to talk to them.  (Def.

Ex. 5 at 42.)

Plaintiff maintained that the argument was a private matter and that Defendants Harrison and

Vega needed to leave because it was none of their business and they were trespassing on private

3

property. (*Id.*) Defendant Harrison testified that he felt his safety was in jeopardy because Pritchett had retreated inside the home and where there were weapons. (Def. Ex. 1 at 32.) Defendant Harrison believed that Plaintiff and Defendant Vega were also in danger and that the situation justified a warrantless entry into the home. (*Id.*) Defendant Harrison did not ask Plaintiff if there was a gun in the house. (Pl. Ex. 5.) Defendants Harrison and Vega tried to go into the house, but Plaintiff stood in their way. (Def. Ex. 1 at 34.) At that time, Defendants Harrison and Vega decided to handcuff Plaintiff. (Pl. Ex. 3 at 34.)

At that moment, Plaintiff's daughter and son-in-law arrived with Plaintiff's infant grandchild. (Pl. Ex. 3 at 34.) Defendant Harrison testified that Plaintiff "pulled away from" the officers and went over and "took hold of the infant." (*Id.*) Plaintiff testified that she "walked away" from Defendants Harrison and Vega to comfort the crying child. (Pl. Ex. 5 at 65-66.) Defendant Harrison believed that Plaintiff was threatening the safety of everyone present by thwarting his efforts to handcuff her. (Def. Ex. 1 at 35.) Harrison did not question Plaintiff about whether there were guns in the house because she was being uncooperative. (Def. Ex. 1 at 58.) It is undisputed that Pritchett did not talk to deputies and was uncooperative. (Def. Ex. 3 at 24.)

Defendant Harrison believed that he had to remove Plaintiff from the "kill zone" in front of the house and that she needed to be detained for a domestic violence investigation. (Def. Ex. 1 at 35; 38.) Defendant Vega did not know what kind of situation was presented and backed up Defendant Harrison's decision to handcuff Plaintiff. (Def. Ex. 2 at 46; 50-51.) Plaintiff disputes the assertion that she was a suspect in a domestic violence investigation. (Pl. Ex. 13.) Plaintiff, a woman in her forties, is a little heavy set and out of shape. (Pl. Ex. 3 at 44.)

When Defendant Vega started to handcuff Plaintiff, she told him not to put her arms behind

4

her back because "it was hurting." (Def. Ex. 2 at 66-67.) Plaintiff also told Defendant Harrison that

he "could not" put her arms behind her back and asked to be handcuffed with her hands in front of

her. (Pl. Ex. 5 at 66.) Plaintiff's daughter told Defendants Harrison and Vega that Plaintiff had

previously broken her shoulder and had heart problems. (Pl. Ex. 6.) Plaintiff told Defendant Harrison

that she had a "surgery" and that they needed to be "careful in the handcuffing process." (Pl. Ex. 4.)

Defendant Harrison admitted that he was informed that Plaintiff had a physical injury and that cuffing

her hands behind her back might aggravate that injury. (Pl. Ex. 3 at 41.)

    After cuffing Plaintiff with her hands behind her back, Defendant Vega sat Plaintiff in a police

car. (Pl. Ex. 5 at 67-68.) Tears began forming in Plaintiff's eyes due to the pain, and Plaintiff again

requested that her hands be cuffed in front. (Pl. Ex. 5 at 67-68.) Defendant Harrison became

impatient and angry, grabbed Plaintiff's legs and threw her into the back seat of the police car where

she landed on her shoulder and was injured. (Pl. Ex. 5 at 68.) After Plaintiff was in the police car,

Defendant Vega transported Plaintiff to a point down the street, where she remained until she was

released about twenty-five minutes later. (Def. Undisputed Facts ¶ 45-47.)

    Defendant Harrison radioed dispatch to report that he had a barricaded subject who might

armed. (Def. Ex. 1 at 47.) Plaintiff disputes the assertion that Pritchett was barricaded in the house

because Pritchett was going in and out of the house and he had not threatened the police with a

weapon. (Pl. Ex. 3 at 51.)

    Defendants Little and Weaver arrived on the scene with other special response team (SRT)

members. (Def. Ex. 1 at 52.) Plaintiff alleges that Little and Weaver failed to defuse to situation,

deployed the special response team, and allowed her to remain in the patrol car with her hands cuffed

behind her back. (Compl. ¶¶ 13-14.) Through conversations with Plaintiff, it was determined that

5

Pritchett was not a danger to himself or others and that no criminal activity had transpired.  (Def. Ex. 4 at 23-24.)  Defendant Weaver spoke to Pritchett on the phone, but Pritchett yelled at him and did not engage in meaningful conversation.  (*Id.*)  Pritchett was not threatening to harm himself or others.  (Def. Ex. 4 at 25.)  The situation ended when it was decided that there was no need for continued law enforcement presence.  (Def. Ex. 4 at 23.)

Plaintiff filed her Complaint in this Court on June 5, 2002.  Plaintiff alleges claims under 42 U.S.C. §1983 against the individual defendants for violation of her Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures, and excessive force (Count I); assault and battery under state law against Defendants Harrison and Vega (Count II); false arrest and illegal imprisonment under state law against te individual Defendants (Count III); and municipal liability claims under 42 U.S.C. §1983 against the Board of County Commissioners of Doña Ana County.

Defendants argue that the individual Defendants are entitled to qualified immunity because their conduct did not violate clearly established law, the individual Defendants used a reasonable amount of force, Defendants Little and Weaver cannot be held liable based on their supervisory status, the individual Defendants are entitled to summary judgment because Plaintiff cannot establish the elements of assault and battery, false arrest or illegal imprisonment, and the Board is entitled to summary judgment because its policies and customs did not demonstrate deliberate indifference to the rights of persons with whom the police come into contact.

## II.    Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 56(f).

Plaintiff has filed a Rule 56(f) affidavit stating that additional discovery is needed on the issue

of whether the County had a custom or policy of inadequate training, supervision and discipline before Plaintiff is able to respond to Defendants' motion for summary judgment on this issue. Specifically, Mr. James Lyle, counsel for Plaintiff states that he requested discovery concerning the subject of other claims of illegal and excessive force made against the Doña Ana County Sheriff's Department and internal affairs investigation files on similar claims of excessive force in connection with the deposition of Doña Ana County Risk Manger Albert E. Fridenstine on November 18, 2002. After Mr. Fridenstine was unprepared to respond to the request, counsel agreed to continue the deposition.

Mr. Lyle states that he re-noticed the Fridenstine deposition for May 19, 2003, but the materials provided by Fridenstine did not identify the deputies involved in past complaints and claims, did not contain internal affairs or investigative files, and did not provide the amounts paid on the claims. In early June 2003, defense counsel contacted Mr. Lyle and advised him that they had additional materials that were responsive to the discovery request and that the materials would be ready for review in the near future. Mr. Lyle avers that Plaintiff is unable to provide a meaningful response to the arguments contained in Defendants' motion for summary judgment as to issue of whether the County had a custom or policy of inadequate training, supervision and discipline. Defendants do not oppose the Rule 56(f) request.

Rule 56(f) allows the court to order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had when a party opposing a motion for summary judgment needs additional discovery to respond to the motion for summary judgment. In order to obtain a continuance under Rule 56(f), the party opposing the motion for summary judgment must furnish an affidavit explaining what facts he needs to discover, why those facts have not been

discovered, and how additional time will help to rebut the allegations of no genuine issue of fact.

*Price ex rel. Price v. Western Resources, Inc.*, 232 F.3d 779, 783-84 (10th Cir. 2000)

In the Rule 56(f) affidavit, Mr. Lyle adequately explained what facts are needed, why those facts have not been discovered, and how additional time would enable Plaintiff to obtain such facts. Accordingly, Plaintiff's Rule 56(f) motion should be granted.  Discovery is reopened for the limited purpose of allowing Defendants' to respond to Plaintiff's discovery requests concerning the issue of whether the County had a custom or policy of inadequate training, supervision and discipline. Defendants are ordered to provide Plaintiff with the requested discovery by August 15, 2003. Plaintiff is ordered to respond to Defendants' Motion for Summary Judgment as the issue of whether the County had a custom or policy of inadequate training, supervision and discipline by August 29, 2003.  Defendants may file a reply by September 5, 2003.

## III.   Defendants' Motion for Expedited Ruling on Defendants' Motion for Separate Trial and Stay of Discovery and Defendants' Motion for Separate Trial and Stay of Discovery.

Defendants' unopposed Motion for an Expedited Ruling is hereby granted.  Defendants move to bifurcate the trial on the claims of against the individual Defendants from the allegations against the County pursuant to FED. R. CIV. PRO. 42(b) and stay discovery pursuant to FED. R. CIV. PRO. 26(b).  Plaintiff opposes this Motion.

The district court has broad discretion in deciding whether to sever issues for trial under Rule 42(b).  *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999).  Bifurcation is appropriate when the litigation of one issue might obviate the need for litigation on another issue. *Amato v. City of Saratoga Springs*, 170 F.3d 311 (2d Cir. 1999).

8

In order to prevail on a claim of municipal liability, a plaintiff must, in addition to showing a constitutional violation, prove that her constitutional injury was inflicted pursuant to government policy or custom. *Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658, 690 (1978). The issue of municipal liability contingent on whether the individual defendants' conduct was unconstitutional. Plaintiff's claims against the County are thus dependent upon the outcome of her claims against the individual Defendants. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995). Because the litigation of the individual liability claim might obviate the need for litigation of the municipal liability claim, I find that bifurcation of the trial in this matter would be conducive to expediting the litigation and would promote judicial economy. *See Order Granting Defendant's Motion to Reconsider*, *Tanberg v. Sholtis*, CIV 02-0348 LCS/LFG, Doc. 134, May 19, 2003. Defendant's motion with respect to bifurcation of the trial is hereby granted.

The jury will initially hear evidence at trial on issues concerning the constitutionality of the individual Defendants' conduct. If the jury finds in favor of Plaintiff and against the individual Defendants, then the trial will immediately reconvene and the same jury will hear the evidence on issues concerning the liability of the County. Because counsel must be prepared to try all issues, and because discovery on the municipal liability claims is necessary to fully resolve Defendants' motion for summary judgment, Defendants' request to stay discovery is denied.

## IV.    Defendants' Motion to Strike.

Defendants move to strike Plaintiff's Exhibits 2, 3, 4, 5, 8, 9, 10, 11, 12, 13 and 14. When analyzing a summary judgment motion, a court must consider "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . ." *See* FED. R. CIV. P.

56 (c).  Materials that do not satisfy the standards of Rule 56 are subject to a motion to strike.  *See*

*Noblett v. General Elec. Credit Corp.*, 400 F.2d 442, 445 (10th Cir. 1968).  Only admissible evidence

may be considered when ruling on a motion for summary judgment.  *See World of Sleep, Inc. v.*

*La-Z-Boy Chair Co.*, 756 F. 2d 1467, 1474 (10th Cir. 1985).

Defendants object to the headings contained in Plaintiff's Exhibits 2, 3, 5, 10 and 14 on the

basis that such headings are hearsay.  Plaintiff has added headings to deposition testimony in an

attempt to separate the testimony in support of each factual category.  Such practice is not

contemplated by the local rules, which direct counsel to highlight the relevant portions of exhibits.

D.N.M.LR-Civ. 10.6.  However, I am capable of distinguishing the headings from the actual

deposition testimony.  I have relied solely on the actual deposition testimony contained in Plaintiff's

Exhibits 2, 3, 5, 10 and 14 and have not relied on the headings in reaching my decision.  Defendants'

motion to strike with respect to Plaintiff's Exhibits 2, 3, 5, 10 and 14 will be denied.

Defendants object to Plaintiff's Exhibit 4, a recorded interview summary of Defendant

Harrison, on the grounds that the author is not specified in the document, the interview summary is

not verbatim, and the summary does not meet the criterial of an admission of a party opponent under

FED.R.EVID. 801(d)(2).  Mr. Lyle questioned Defendant Harrison about the contents of the interview

during his deposition. (Pl. Ex. 3 at 67; Def. Ex. 1 at 67-69.)  Although Harrison remembered the

interview, he did not adopt the contents as his statement.  (*Id.*)  Plaintiff has not shown how this

statement would be admissible under FED.R.EVID. 807.  Accordingly, the motion to strike with

respect to Plaintiff's Exhibit 4 is granted.

Defendants move to strike Plaintiff's Exhibits 8, 9, 12 and 13 on the ground that the policies

and procedures contained in these exhibits were not in effect at the time of the incident.  Plaintiff

responds that Defendants have not provided any facts showing when the policies went into effect.

Defendants reply that the policies and procedures that were in effect on October 4, 2000 are attached

to the Affidavit of David Weaver, attached to Defendants' motion for summary judgment. Exhibits

8, 9, 12 and 13 relate to Plaintiff's municipal liability claims, which will be addressed after Plaintiff

obtains additional discovery and files a supplemental brief. Defendants should provide discovery to

Plaintiff regarding the effective date of the policies in question. The motion to strike will be granted

with respect to Exhibits 8, 9, 12, and 13. Plaintiff may submit the policies in effect on October 4,

2000 in support of her response to Defendants' motion for summary judgment on the issue of

whether the County had a custom or policy of inadequate training, supervision and discipline.

Defendants move to strike Plaintiff's Exhibit 11, an Affidavit and Report from Danny Ross,

an individual hired by Plaintiff as a law enforcement expert. Defendants object to this exhibit on the

grounds that Mr. Ross is not qualified as an expert, Mr. Ross relied on policies that were not in effect

on October 4, 2000, and Mr. Ross attempts to offer an opinion as to the legality of the actions of

Defendants. Plaintiff responds the Mr. Ross is qualified as a law enforcement expert and that his

opinion would be helpful to the trier of fact on the issue of whether Defendants' conduct fell below

accepted standards in the field of law enforcement. Plaintiff's Exhibit 11 is not necessary for

resolution of the issues currently under consideration. Moreover, Mr. Ross may have relied on

inapplicable policies to form his opinion. Under these circumstances, Defendants' motion to strike

with respect to Plaintiff's Exhibit 11 will be granted. Nothing herein shall be considered as a ruling

on whether Mr. Ross will be permitted to give opinions at trial.

V.      **Summary Judgment Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific

facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Munoz*, 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Bullington v. United Air Lines*, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The district court may only consider admissible evidence submitted to defeat summary judgment. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n. 1 (10th Cir. 2000).

## VI.     Analysis

### A.     Whether the Individual Defendants are Entitled to Summary Judgment Based on Qualified Immunity.

A government official is entitled to qualified immunity from civil damages when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court clarified the qualified immunity analysis in *Saucier v. Katz*, 533 U.S. 194 (2001). The first question is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officers conduct violated a constitutional right?" *Id.* at 201. If a court finds that a favorable view of the facts alleged show the violation of a constitutional right, the next sequential step is to ask whether

the right was clearly established at the time of the defendants' alleged unlawful conduct. *Id*. Only if the plaintiff establishes both elements of the test does a defendant then bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

### 1. Plaintiff's Unlawful Seizure Claim

Plaintiff alleges that the individual Defendants violated her Fourth Amendment right to be free from an unreasonable seizure of her person and right to be free from excessive force against her person. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Its proscriptions safeguard the privacy and security of individuals against arbitrary invasions by imposing a standard of objective reasonableness upon the exercise of discretion by government officials. *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979). Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on an individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Holland v. Harrington*, 268 F.3d 1179, 1190 (10th Cir. 2001). The defendants' subjective intent is not a consideration. *Graham*, 490 U.S. at 397.

The Tenth Circuit has identified three categories of police-citizen encounters: "(1) consensual encounters which do not implicate the Fourth Amendment, (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity, and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *United States v. Davis*, 94 F.3d 1465, 1467-68 (10th Cir. 1996). The scope of a seizure is reasonable only if the officer's conduct is at all times based on

14

facts sufficient to warrant a man of reasonable caution in the belief that such conduct is appropriate. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

The individual Defendants argue that they are entitled to qualified immunity because their encounter with Plaintiff was a lawful investigative detention.  An investigative detention, or *Terry* stop, is typically brief, nonintrusive detention during which officers ask preliminary investigative questions and may even frisk a citizen for weapons if necessary for their safety. *United States v. Griffin*, 7 F.3d 1512, 1516 (10th Cir. 1993). When addressing the constitutionality of an investigative stop, "the inquiry is twofold. First, the officer's action must be 'justified at its inception.' " *United States v. King*, 990 F.2d 1552, 1557 (10th Cir.1993) (*quoting Terry*, 392 U.S. at 20).  Second, "the officer's action [must be] 'reasonably related in scope to the circumstances which justified the interference in the first place.' " *King*, 990 F.2d at 1557.  If a police-citizen encounter exceeds the scope of a *Terry* stop, the detention becomes an arrest that must be supported by probable cause. *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002).

Plaintiff does not contest her initial questioning by Defendants Harrison and Vega.  However, she does argue that these Defendants exceeded the permissible scope of an investigative *Terry* stop due to the use of handcuffs, her placement in the police car and the length of detention.  There is no "bright-line rule" between an investigative detention and an arrest.  *Neff*, 300 F.3d at 1220. "'[C]ommon sense and ordinary human experience must govern over rigid criteria.'" *Id*. (*quoting United States v. Sharpe*, 470 U.S. 675, 685 (1985)).  A *Terry* stop does not necessarily become an arrest if police use handcuffs and detain a suspect for a significant period of time.  *See e.g. United States v. Neff*, 300 F.3d at 1219-1221 (holding that investigative stop was not an arrest where officers held defendant at gunpoint and then handcuffed him for a prolonged period of time).  Officers may

15

handcuff suspects during a *Terry* stop if the measures of force are reasonable under the circumstances. *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir.1993). The use of handcuffs is appropriate so long as there was a reasonable, articulable ground for fearing danger from the suspect. *Neff*, 300 F.3d at 1221. "The Fourth Amendment does not require that officers unnecessarily risk their lives when encountering a suspect whom they reasonably believe to be armed and dangerous." *Id*.

For instance, in *United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996), officers stopped three vehicles for speeding at 3:30 a.m. *Id*. at 1495-96. None of the drivers had a license and an initial report indicated that one of the suspects was wanted on a felony warrant and considered armed and dangerous. *Id*. at 1496-97. The officers handcuffed the suspects, forced them to kneel on the pavement at gun point and searched the suspects and their vehicles. *Id*. at 1497. At 5:00 a.m., the officers learned that the suspect in question was not the wanted felon. *Id*. at 1498. The Tenth Circuit concluded that although the incident bordered on "an illegal arrest, the precautionary measures of force were reasonable under the circumstances." *Id*. at 1506. However, once the officers learned that the suspect was not a dangerous felon, continued use of handcuffs constituted an illegal arrest. *Id*. at 1507.

The individual Defendants maintain that they handcuffed Plaintiff because she was a domestic violence suspect and they needed to move her out of the "kill zone" in front of the house. Separation of suspects in a domestic violence situation could be a reasonable course of action if the purpose were to diffuse danger. However, the facts must be construed in the light most favorable to Plaintiff in determining whether Plaintiff has alleged a violation of a constitutional right. *Saucier*, 533 U.S. at 201.

The individual Defendants had no tips or indications that Plaintiff was armed or dangerous. The neighbor who called 911 did not see any weapons. While Defendant Harrison had observed weapons in the house during prior calls, the previous calls had resolved without violence. The dog was taken inside the house and restrained. Although Pritchett had a knife on his belt, Ms. Shipp was not armed and did not threaten the officers. Pritchett had retreated into the house and was not threatening anyone. Despite the absence of physical danger, Defendants Harrison and Vega cuffed Plaintiff and detained her in a police car for a prolonged period. Consideration of the facts in the light most favorable to Plaintiff leads to the conclusion that the measures of force used were not reasonable under the circumstances. Plaintiff has asserted a violation of her Fourth Amendment right to be free from an unreasonable seizure.

The second inquiry under *Saucier* is whether the law was clearly established as of the date of the incident. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000). The Tenth Circuit decided *Shareef* in 1996 and *Purdue* in 1993. These cases held that police officers needed reasonable, articulable grounds for fearing danger from a suspect to justify the use of handcuffs or prolonged detention in the context of an investigative detention. On October 4, 2000, the law was clearly established with respect to Plaintiff's unlawful seizure claim. Plaintiff has alleged a violation of a constitutional right that was clearly established on the date of the incident. Thus, Plaintiff has satisfied the two prongs of *Saucier*.

Defendants thus bear the traditional burden of showing that there are no genuine issues of material fact in order to be entitled to judgment as a matter of law. *See Albright*, 51 F.3d at 1535.

17

Cases involving intensely factual inquiries are often not amenable to resolution by summary judgment. *See e.g. O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (severity and pervasiveness evaluation of sexual harassment claim is particularly unsuited for summary judgment because it is quintessentially a question of fact). Fourth Amendment inquiries are highly dependent on the facts. *See United States v. Barbee*, 968 F.2d 1026, 1029 (10th Cir. 1992). As it now stands, the record contains insufficient evidence to determine the ultimate issues. These issues must be decided by the finder of fact at trial. Therefore, Defendants' motion for summary judgment based on qualified immunity with respect to Plaintiff's Fourth Amendment unlawful seizure claim should be denied. *See Foote v. Speigel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

### 2. Plaintiff's Excessive Force Claim

Claims of excessive force are analyzed under the Fourth Amendment. *Graham*, 490 U.S. at 395. The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer at the scene: recognizing the fact that an officer may be forced to make split-second judgments." *Id.* at 396-97. The factors employed to determine reasonableness are the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and whether the subject is resisting arrest. *Wilson v. Meeks*, 52 F.3d 1547, 153 (10th Cir. 1995). Neither contact nor physical injury is required for force to qualify as excessive. *Holland*, 268 F.3d at 1195.

In analyzing whether a plaintiff has alleged a violation of a constitutional right, the facts must be assessed in the light most favorable to the plaintiff. *Saucier*, 533 U.S. 201. In support of her position, Plaintiff has submitted evidence that she informed Defendants Harrison and Vega that she could not put her arms behind her back and asked them to handcuff her with her arms in front of her.

18

Plaintiff's daughter told Harrison and Vega that Plaintiff had previously broken her shoulder and that Plaintiff had heart problems.  Plaintiff told Harrison that she had undergone surgery and that they needed to be careful with her.

Taken in the light most favorable to Plaintiff, the facts show that after cuffing Plaintiff with her hands behind her back, Vega sat Plaintiff in a police car.  Tears began forming in Plaintiff's eyes due to the pain, and Plaintiff again requested that her hands be cuffed in front.  Harrison became impatient and angry, grabbed Plaintiff's legs and threw her into the back seat of the police car where she landed on her shoulder and was injured.  A neighbor had complained that Plaintiff and her boyfriend were fighting in the front yard, but there was no indication that Plaintiff had physically assaulted anyone.  At the time the officers handcuffed her, Plaintiff did not pose an immediate threat to the safety of the officers, and she was not physically resisting arrest.  Taken in the light most favorable to Plaintiff, the facts alleged show that the officers' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201.  Plaintiff has satisfied the first question under *Saucier*.

The second *Saucier* inquiry is whether the law was clearly established in light of the specific context of the case.  *Saucier*, 533 U.S. at 201.  The Fourth Amendment excessive force standard was clearly established on the date of the incident.  *Wilson*, 52 F.3d at 152; *Dixon v. Richer*, 992 F.2d 1456, 1462 (10th Cir. 1991).  Moreover, the contours of the right were sufficiently clear that a reasonable officer would understand that what he was doing violated that right.  *Saucier*, 533 U.S. at 202.  The qualified immunity doctrine acknowledges that reasonable mistakes can be made as to the legal constraints imposed on police conduct.  *Id*.  Given the specific context of this case, a reasonable officer would have been on notice that treatment of a suspect in accordance with the facts taken in the light most favorable to Plaintiff crossed the "'hazy border between excessive and

19

acceptable force.'" *Saucier*, 533 U.S. at 206 (*citing Priester v. Riviera Beach*, 208 F.3d 919, 926-927 (11th Cir. 2000)). Construed in the light most favorable to Plaintiff, the facts of this case would not permit an officer to have a reasonable mistake as to what the law allowed.

Plaintiff has satisfied the second prong of *Saucier*. Defendants assumed the traditional summary judgment burden. Defendants have failed to meet their summary judgment burden of establishing that there are no genuine issues of material fact in dispute. Material facts remain in dispute that must be resolved by the fact finder at trial. Accordingly, Defendants' motion for summary judgment based on qualified immunity with respect to Plaintiff's Fourth Amendment unlawful seizure claim should be denied.

**B.     Whether Defendants Little and Weaver are Entitled to Summary Judgment Plaintiff's Direct Constitutional Claims.**

Defendants Little and Weaver argue that they are entitled to summary judgment because they were not personally involved in the alleged constitutional violations. In order to establish liability under §1983, a plaintiff must show that an affirmative link exists between the constitutional deprivation and either the defendant's personal participation, his exercise of control or direction, or his failure to supervise. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). Plaintiff concedes that Defendants Little and Weaver were not personally involved in the alleged constitutional violations. However, Plaintiff asserts that these defendants may be liable for the inadequate supervision and training of Defendants Harrison and Vega.

The Complaint does not allege that Defendants Little and Weaver failed to supervise Defendant Harrison and Vega. Counts II, and IV do not name Little and Weaver. Count III, the false arrest and illegal imprisonment claim, does name these Defendants. However, the state law tort

of false arrest implies that the defendant official be actively involved in the arrest, rather than merely the underlying investigation. *See Johnson v. Weast*, 123 N.M. 470, 474, 943 P.2d 117, 121 (Ct. App. 1997). The Complaint fails to allege that Little and Weaver participated in Plaintiff arrest or detention. Thus, Count III fails to state a claim against Little and Weaver. Accordingly, all claims against these Defendants should be dismissed.

**C.    Whether Defendants are Entitled to Summary Judgment on Plaintiff's Claims of Assault and Battery, False Arrest or Illegal Imprisonment.**

Under New Mexico law, an assault requires a threat or menacing conduct which causes another person to reasonably believe he is in danger of receiving an immediate battery. *Romero v. Sanchez*, 119 N.M. 690, 693, 895 P.2d 212, 215 (1995). A battery is an unpermitted contact. *Sanford v. Presto Mfg. Co.*, 92 N.M. 746, 747, 594 P.2d 1202, 1203 (Ct. App. 1979) *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148 (2001). In attempting to make an arrest or preserving the peace, a police officer is entitled to use such force as is reasonably necessary under all the facts and circumstances of a case. *Mead v. O'Connor*, 66 N.M. 170, 171, 344 P.2d 478, 479 (1959).

Plaintiff was handcuffed and placed in the back seat of a police car. Plaintiff maintains that she was subjected to rough treatment and was injured in the process. Defendants maintain that the officer's actions were justified under the circumstances. I find that there are sufficient disputes of material fact to preclude summary judgment on Plaintiff's assault and battery claim.

The tort of false imprisonment involves an unlawful interference with the personal liberty or freedom of movement of another. *Diaz v. Lockheed Electronics.*, 95 N.M. 28, 30, 618 P.2d 372, 374 (Ct. App. 1980). Plaintiff was held handcuffed in the back seat of a police car for approximately

twenty-five minutes. Defendants assert that the detention was appropriate in light of the circumstances. I find that there are sufficient issues of material fact to deny Defendants' motion for summary judgment on Plaintiffs claim for false imprisonment.

## VII.    Conclusion

Plaintiffs are entitled to additional discovery on the issue of whether Doña Ana County had a custom or policy of inadequate training, supervision and discipline. A ruling on this issue will be held in abeyance until the permitted discovery and required briefing has been completes. The individual Defendants are not entitled to qualified immunity because material facts are in dispute. The Complaint fails to state a claim against Defendants Little and Weaver. Defendants are not entitled to summary judgment on the state law claims due to the existence of material facts.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Rule 56(f) affidavit attached to Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. 51), filed on June 26, 2003, is **GRANTED.** Discovery is reopened on the issue of  whether the County had a custom or policy of inadequate training, supervision and discipline.

**IT IS FURTHER ORDERED** that Defendants shall provide Plaintiff with the requested discovery by August 15, 2003.

**IT IS FURTHER ORDERED** that Plaintiff shall respond to Defendants' Motion for Summary Judgment as the issue of  whether the County had a custom or policy of inadequate training, supervision and discipline by August 29, 2003. Defendants may file a reply by September 5, 2003.

**IT IS FURTHER ORDERED** that Defendants' Motion for Expedited Ruling on Defendants' Motion for Separate Trial and to Stay Discovery (Doc. 47), filed on June 16, 2003, is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Separate Trial and to Stay Discovery  (Doc. 49), filed on June 16, 2003, is **GRANTED AS TO THE SEPARATE TRIAL AND DENIED AS TO THE REQUEST FOR STAY.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 41), filed on May 21, 2003, is **DENIED** with respect to the individual Defendants' assertion of qualified immunity and held in abeyance as to the municipal liability claims pending further discovery and briefing as ordered herein.

**IT IS FURTHER ORDERED** that the claims against Defendants Little and Weaver are dismissed with prejudice.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**
**BY CONSENT AND DESIGNATION**